IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| HUBERT GLENN RASCHKE, | § | |
| TDCJ No. 01476373 | § | |
|     Petitoner, | § | |
| | § | |
| v. | § | Civil Action No. 7:13-cv-148-O-KA |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

**FINDINGS AND RECOMMENDATION**

Under the authority of 28 U.S.C. § 636(b) and Rules 8(b) and 10 of the Rules Governing Section 2254 Proceedings for the United States District Courts, this case was referred to the under-signed United States Magistrate Judge by Order of Reference (Docket No. 19) for hearing, if necessary, and proposed findings of fact and recommendation for disposition.

Petitioner Hubert Glenn Raschke brings his habeas corpus petition under 18 U.S.C. §2254 claiming that he was denied a federal constitutional right when the Texas Board of Pardons and Paroles (Board) refused to grant him a parole when the "calendar time" he served in prison added together with the "good time" he had accumulated equaled or exceeded the duration of the sentence under which he was then being held in the Texas prison.

Raschke is currently being held in Texas prison pursuant to a sentence of ten years for having failed to register as a sex offender. On December 2, 2007, he was found guilty on his plea of guilty to the criminal offense of failure to comply with the registration requirements and was sentenced to a term of ten years. He had previously been convicted of the criminal offense of indecency with a child in violation of Texas Penal Code Section 22.011. A procedural history of any direct or

collateral proceedings with regard to Raschke's holding convictions is not relevant to the disposition of this case because he does not directly challenge his conviction. Rather, Raschke challenges the Board's denial of his release to parole. The Texas Board of Pardons and Paroles denied Raschke a parole on November 26, 2012. At that time Raschke had served 6 years and 10 months of calendar flat time and had accumulated a total of 5 years, 8 months, and 15 days of good time[1] and 3 years and 5 months of work time credits.[2] Raschke filed a state application for writ of habeas corpus challenging this denial, which the Texas Court of Criminal Appeals denied without written order on October 30, 2013. Raschke filed the instant federal petition for writ of habeas corpus, challenging the Board's denial, on December 2, 2013. This Court ordered the Director to file a preliminary response addressing whether Raschke's petition was barred by the statute of limitations. (Docket No. 7). On May 7, 2014, the Director filed his response finding that Raschke's petition was timely. (Docket No.13). This Court agreed with the Director's response that Raschke's petition is not barred by limitations and this proceeding followed. (Docket No. 18).

Petitioner's Claims

By his petition and memorandum in support thereof Raschke claims that since at the time of his parole hearing he had already served calendar time exceeding one-half of his sentence, without even considering his "good time credits," and since he had accumulated more than enough good time credits which when added to his calendar time would exceed the duration of his sentence he was entitled to release on parole. He claims the Texas the "good time" statute creates a

---

[1] The term "good time" used by Raschke and intermittently by the courts refers to "good conduct time" as statutorily defined by Tex. Gov't Code § 498.003 (2014).

[2] See Exhibit A to Response (Docket No. 20), business records affidavit of TDCJ office which maintains inmate sentence service time records.

constitutional expectancy of early release on parole that cannot be denied without due process. Raschke acknowledges that at the time of his parole hearing, Texas Government Code §508.145(d) expressly excluded consideration of "good conduct time" from the calculation of whether an inmate had served one-half of his sentence in order to be eligible for parole, but asserts that his good time credits created such an expectancy of release as to assure him of the parole release that the Board wrongfully denied. In support of his claim, Raschke impliedly relies upon the reasoning set forth in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979) wherein the U. S. Supreme Court found a liberty interest in the "expectation of release" under the Nebraska Penal Laws that were phrased in terms of mandatory release. He further expressly relies upon the holdings by a Texas Court of Appeals in *Espinoza v. State*, 29 S.W. 3d 260 (2001) and *Falon v. State*, 44 S.W. 3d 249 (2001) relating to the language of a mandatory jury instruction[3] regarding the relationship between good time and release on parole or upon mandatory supervision. Finally, Raschke urges support is found in the guidelines developed by the Board under the statutory directive of Texas Government Code §508.144.

State's Response

The State's asserts that since Texas parole statutes regarding parole and eligibility are phrased in permissive rather than mandatory terms,[4] the Texas statutes do not create a liberty interest or a "protectible expectancy of release" mandating either release or due process in the release decision.[5] Therefore, in Texas there is no constitutional right to release on parole before the

---

[3] Tex. Code Crim. Proc. art. 37.07.

[4] Comparing the decision in *Greenholtz* to the decision in Board of Pardons v. Allen, 482 U.S. 369,378 (1987).

[5] Williams v. Briscoe, 641 F. 2d 274, 276-77 (5th Cir. 1982); Thomas v. Torres, 717 F. 2d 248, 249 (5th Cir. 1983); Creel v. Keene, 928 F.2d 707, 712 (5th Cir.), cert. denied, 501 U.S. 1210, 111 S. Ct. 2809, 115 L. Ed. 2d 982 (1991); Gilbertson v.

3

expiration of an inmate's sentenced term. Further, since there is no liberty interest in obtaining parole in Texas, inmates cannot complain of the constitutionality of procedural devices attendant to parole decisions, citing *Orellana v. Kyle*, 65 F. 3d 32 (5th Cir. 1995). Thus, since Raschke has failed to raise a constitutional issue as a basis for federal habeas relief, his petition should be dismissed with prejudice.

## Analysis

The arguments by the State are persuasive. Neither habeas nor civil rights relief can be had, however, absent the allegation by a plaintiff that he has been deprived of some right secured to him by the United States Constitution or laws. 28 U.S.C. § 2254(a); 42 U.S.C. § 1983; *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); *Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir.1983) (federal court may entertain an application for a writ of habeas corpus from a person in state custody only on the ground that he is in custody in violation of the Constitution or laws of the United States). Therefore, if Raschke has not alleged a deprivation of any such right, he has failed to state a claim for either habeas or civil rights relief.

There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, supra. Even as late as 2004, the Texas courts have held that the parole decision is discretionary and not mandatory. In *Ross v. State*, 133 S.W. 3d 618 (Tex. Crim. App. 2004) the court recited that, "Eligibility for parole does not guarantee that parole will be granted."

The analysis of the relationship between "good time" or "good conduct time" credits and parole, begins with the structure of parole and mandatory supervision statutes in Texas at the time

---

Texas Bd. of Pardons & Paroles, 993 F.2d 74, 75 (5th Cir.1993).

of the Board's decision in November 26, 2012. At that time, Texas had established two different systems relating to release of inmates before or upon the expiration of term of their sentence; ie, parole and mandatory supervision. Good conduct time serves two important functions. It determines a prisoner's mandatory supervision release date, and in some cases it advances the date of eligibility for discretionary parole.[6] Accrual of "good time" is an important factor affecting the actual term of incarceration because of the benefit of good time for many inmates and the large awards of good time that are given under Texas law. Earning good conduct time is a privilege rather than a right. Good conduct time applies only to eligibility for parole or mandatory supervision as provided by Section 508.145 or 508.147 and does not otherwise affect an inmate's term. Good conduct time is a privilege and not a right.[7]

Subdivision (d)(1) of Texas Government Code § 508.145 establishes the formula for an inmate's eligibility for parole for an inmate, such as Raschke, serving sentences not covered by the preceding subdivisions (a) through (c). That section expressly precludes inclusion of an inmate's good time credits in the formula for determining when an inmate becomes "eligible" for parole consideration.

Raschke argues that since he had actually served calendar time amounting to more than one-half of his sentence, not only was he eligible for parole under § 508.145 (d)(1) but his good time added to his calendar time amounted to more than the ten years of his sentence. Analogizing his situation to the United States Supreme Court's decision in *Greenholtz*, he claims his accumulated good time created a "protectible expectations of release" that was wrongfully denied by the parole board.

---

[6]   Tex. Gov't Code § 508.147(f).

[7]   Tex. Gov't Code § 498.003 (a).

In *Greenholtz*, the Supreme Court analyzed the Nebraska statutory structure of its system of parole and determined that it provided an inmate such "an expectation of release" that the denial of parole amounted to constitutional violation. After *Greenholtz*, in *Williams v. Briscoe*,[8] the Fifth Circuit determined that the Texas statutory structure of its system of parole, being discretionary and not mandatory for the parole board, <u>did not create</u> "a protectible expectation of release" as to mandate release on parole. Accord, *Thomas v. Torres*, 717 F. 2d 248, 249 (5th Cir. 1983); *Gilbertson v. Texas Bd. of Pardons & Paroles*, 993 F.2d 74 (5th Cir. 1993).

While certain Federal and Texas cases recognize that in the context of Texas' former statutory structure of its system of "mandatory supervision" inmates may have a "protectible expectation of release" as to create a liberty interest of constitutional level,[9] subsequent cases have recognized the distinction between parole and mandatory supervision release. See *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000) (noting that while the parole system in Texas creates no presumption of release on parole, the mandatory supervision statute does). Indeed, the distinction between parole and mandatory supervision in the context of the application of "good time" has been recognized by the Texas courts. In *Espinoza v. State*, 29 S.W. 3d 257 ( 2000) a Texas court of appeals in discussing the propriety of a statutorily required jury charge found that:

---

[8] Williams v. Briscoe, 641 F.2d 274, 275 (5th Cir. 1981), following appeal after decision on remand from the court in Williams v. Briscoe, 599 F.2d 620 (5th Cir. 1979).

[9] Garcia Lopez v. Quarterman, 225 Fed. Appx. 243 (5th Cir. 2007) citing Madison v. Parker, 104 F. 3d 765,768 (5th Cir. 1997); Malci v. Thaler, 211 F. 3d 953, 957-58 (5th Cir. 2000); and Ex parte Geiken, 28 S.W. 3d 553, 558 (Tex. Crim. App. 2000).

> "[G]ood conduct time is an important aspect of both mandatory supervision and parole. In the context of mandatory supervision, good conduct time is perhaps a more decisive factor because it is part of the equation used in calculating the release date. Parole, on the other hand, is discretionary and is not computed according to a formula. However, the accumulation of good conduct time is nevertheless an important consideration when deciding whether an inmate should be released on parole, i.e., if an inmate's misconduct has resulted in the loss of good conduct time, he is ineligible for parole for at least six months."

Furthermore, subsequent statutory changes made by the Texas legislature in 1995, prior to Raschke's conviction, expressly authorized the parole panel to exercise some discretion in deciding whether a person who is eligible for release on mandatory supervision would, nonetheless, be kept in custody.[10] [11]

Raschke's reliance on the Texas state court cases of *Espinoza* and *Falon* is likewise unavailing, as these cases merely interpret the meaning of a statutorily mandated jury instruction[12] ostensibly based upon the express language of the parole statute,[13] both of which expressly negate

---

[10] Tex. Gov't Code § 508.149
(a) . . .
(b) An inmate may not be released to mandatory supervision if a parole panel determines that:
    (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and
    (2) the inmate's release would endanger the public.

[11] See also, Luquis v. State, 72 S.W.3d 355 (Tex. Crim. App. 2002) for a complete summary of the relationship between "good conduct time" in the context of both parole and mandatory supervision processes and the history of the modifications of the statutory structure of these processes and their relation to the statutory jury charge issue, finding the issue constitutional.

[12] Tex. Code Crim. Proc. art. 37.07  (2014).

[13] Tex. Gov't Code § 508.145  (2014).

the application of good time credits to the parole eligibility formula.[14]

Finally, Raschke's additional reference to certain elements of consideration by the parole board in making its parole determination with respect to any inmate[15] does not alter the fact that "good conduct time" credits alone cannot be used to mandate parole release. Subdivisions (a), (b) and (c) of the applicable Administrative Code provisions make that abundantly clear.[16]

For the reasons stated based upon applicable statutory and case law, Raschke has failed to allege a violation of any right guaranteed to him by the Constitution or laws of the United States. Accordingly, I recommend that his petition be dismissed with prejudice.

It is so ORDERED, this 13th day of August, 2014.

_Robert K. Roach_
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

---

[14] See also, Ross v. State, 133 S. W. 3d. 618 (Tex. Crim. App. 2004).

[15] Tex. Gov't Code §508.144 and Tex. Adm. Code § 145.2.

[16] 37 Tex. Adm.Code 145.2 "(a) The parole decision-maker is vested with complete discretion in making parole decisions to accomplish the mandatory duties found in Code of Criminal Procedure, Article 42.18.

(b) There are no mandatory rules or criteria upon which parole release decisions must be based. The parole decision-maker has the complete discretion to investigate a candidate for parole."
...
(c) The adoption and use of the standard parole guidelines does not imply the creation of any parole release formula, or a right or expectation by an inmate to parole based upon the guidelines. A parole score and salient factor while utilized for research and reporting is not to be construed so as to indicate the parole decision. The standard parole guidelines shall serve as an aid in the parole decision process and the parole decision shall be at the discretion of the parole decision-maker."

<u>Standard Instruction to Litigants</u>

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).